**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STEVEN ESTLE, MARGARET AHLDERS,
LANCE SALONIA, and CHERYL WITMER,

            Plaintiffs,

     v.

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

            Defendant.

Case No. 1:19-cv-02729 (PGG)

**REPLY IN SUPPORT OF DEFENDANT**
**INTERNATIONAL BUSINESS MACHINES CORPORATION'S**
**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.    THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM
      BECAUSE OWBPA IS INAPPLICABLE TO PLAINTIFFS' WAIVERS ...................... 1

      A.    *14 Penn Plaza* Controls The Issue Before This Court ........................................... 1

      B.    Plaintiffs' Textual And Legislative History Arguments Are Inconsistent
            With *14 Penn Plaza* And Fail On Their Own Merits ........................................... 4

II.   THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM
      BECAUSE THE FAA FORECLOSES PLAINTIFFS' INTERPRETATION OF
      OWBPA ..................................................................................................................... 8

CONCLUSION .................................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Page**

**CASES**

*14 Penn Plaza LLC v. Pyett*,
    556 U.S. 247 (2009)..............................................................................1, 2, 3, 4, 5, 6

*Am. Ex. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)..............................................................................9, 10

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)..............................................................................9

*Bennett v. Dillard's, Inc.*,
    849 F. Supp. 2d 616 (E.D. Va. 2011) ....................................................4

*CompuCredit Corp. v. Greenwood*,
    565 U.S. 95 (2012)................................................................................9

*Dekalb Cty. Pension Fund v. Transocean Ltd.*,
    817 F.3d 393 (2d Cir. 2016)..................................................................8

*Epic Sys. Corp. v. Lewis*,
    --- U.S. ---, 138 S. Ct. 1612 (2018)......................................................9, 10

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)................................................................2, 3, 4, 7, 8, 10

*Gilmer v. Interstate/Johnson Lane Corp.*,
    895 F.2d 195 (4th Cir. 1990), *aff'd.*, 500 U.S. 26 (1991) ......................7

*Hammaker v. Brown & Brown, Inc.*,
    214 F. Supp. 2d 575 (E.D. Va. 2002) ....................................................4

*Hart v. Canadian Imperial Bank of Commerce*,
    43 F. Supp. 2d 395 (S.D.N.Y. 1999)......................................................3

*Horowitz v. AT&T*,
    2018 WL 1942525, *opinion clarified on denial of reconsid.*, 2019 WL 77306
    (D.N.J. Jan. 2, 2019) .............................................................................3

# TABLE OF AUTHORITIES
(continued)

**Page**

*Lamps Plus, Inc. v. Varela*,
--- U.S. ---, 139 S.Ct. 1407 (2019)........................................................................................9

*McLeod v. Gen. Mills, Inc.*,
140 F. Supp. 3d 843 (D. Minn. 2015), *rev'd in part on other grounds*, 854
F.3d 420 (8th Cir. 2017) ........................................................................................4

*McLeod v. Gen Mills, Inc.*,
856 F.3d 1160 (8th Cir. 2017) ........................................................................................3, 4

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985)........................................................................................7

*Nicholson v. CPC Int'l, Inc.*,
877 F.2d 221 (3d Cir. 1989)........................................................................................7

*Nixon v. Missouri Municipal League*,
541 U.S. 125 (2004)........................................................................................6

*Oubre v. Entergy Ops., Inc.*,
522 U.S. 422 (1998)........................................................................................3, 4

*Reiter v. Sonotone Corp.*,
442 U.S. 330 (1979)........................................................................................5

*Rodriguez de Quijas v. Shearson/AmEx, Inc.*,
490 U.S. 477 (1989)........................................................................................7

*S.E.C. v. Dorozhko*,
574 F.3d 42 (2d Cir. 2009)........................................................................................6, 7

*Schappert v. Bedford, Freeman & Worth Pub. Grp., LLC*,
2004 WL 1661073 (S.D.N.Y. July 23, 2004) ........................................................................................3

*Shearson/AmEx, Inc. v. McMahon*,
482 U.S. 220 (1987)........................................................................................7

*Small v. U.S.*,
544 U.S. 385 (2005)........................................................................................6

**TABLE OF AUTHORITIES**
(continued)

Page

*Sutherland v. Ernst & Young LLP*,
726 F.3d 290 (2d Cir. 2013)...............................................................................9

*Thiele v. Merrill Lynch, Pierce, Fenner & Smith*,
59 F. Supp. 2d 1060 (S.D. Cal. 1999)................................................................4

*U.S. v. Alvarez–Sanchez*,
511 U.S. 350 (1994)............................................................................................6

*U.S. v. Palmer*,
16 U.S. 610 (1818)..............................................................................................6

**STATUTES**

29 U.S.C. § 216(b) .........................................................................................4, 5, 6

29 U.S.C. § 626(b) .........................................................................................4, 5, 6

29 U.S.C. § 626(c) ................................................................................................5

29 U.S.C. § 626(f)......................................................................................1, 2, 6, 7

**OTHER AUTHORITIES**

136 Cong. Rec. H8614-02 (Oct. 2, 1990) ............................................................8

Plaintiffs' collective action waivers are not subject to the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f).  Nothing in Plaintiffs' Opposition changes this clear legal result.  Plaintiffs fail to squarely engage IBM's arguments and mainly stick to arguments that IBM already refuted in its opening brief.  This Court should dismiss the Complaint with prejudice.

**I.      THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM BECAUSE OWBPA IS INAPPLICABLE TO PLAINTIFFS' WAIVERS.**

**A.      *14 Penn Plaza* Controls The Issue Before This Court.**

Plaintiffs' Complaint is foreclosed by controlling U.S. Supreme Court precedent holding that OWBPA's "any right or claim" language means any "substantive right," not procedural rights.  (*See* Mot. 5-10 (citing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 259, 265-66 (2009)).) Since collective actions are joinder procedures, not "substantive rights" within OWBPA's scope (Mot. 6-7), Plaintiffs can waive their ability to bring collective actions without IBM satisfying OWBPA's requirements.  Plaintiffs argue that this Court should disregard the *14 Penn Plaza* decision.  For multiple reasons, Plaintiffs' argument is incorrect.

First, Plaintiffs err in asserting (Opp. 13) that *14 Penn Plaza* is meaningfully distinguishable.  To be sure, *14 Penn Plaza* involved an arbitration clause in a union contract, and the Court considered whether the arbitration clause was "outside the permissible scope of the collective-bargaining process."  *See* 556 U.S. at 257.  But the Supreme Court also addressed the argument that the contract's arbitration provision was not a "knowing and voluntary" waiver of a right to a judicial forum under OWBPA.  *See id.* at 259.  In resolving that question, the Supreme Court adopted a broad rule that OWBPA's voluntariness requirements apply only to substantive rights, not procedural rights like access to a judicial forum.  *See id.*  That broad rule is applicable here and mandates dismissal of the Complaint.

Second, for the same reason, Plaintiffs' contention (Opp. 14) that the Supreme Court limited its *14 Penn Plaza* holding to "arguments advanced and briefed by the parties" is beside the point.  While the Supreme Court refused to consider some arguments that the respondent "did not raise," *see 14 Penn Plaza*, 556 U.S. at 272, those arguments are not at issue here.  *See id.* (noting the waived arguments).  The argument that is relevant—whether the arbitration provision was invalid under OWBPA's § 626(f)(1)—was argued and decided.  *See id.* at 259 (concluding that "the agreement to arbitrate ADEA claims is not the waiver of a 'substantive right' as that term is employed" in the statute).  Similarly, *14 Penn Plaza* is not inapposite (Opp. 14) simply because the plaintiffs argued that proceeding in court was a "substantive right" (as opposed to a generalized "right," as Plaintiffs assert here).  The Supreme Court's holding did not rest on any such distinction; rather, the Court reasoned that the arbitration agreement was not a prospective waiver in violation of OWBPA's § 626(f)(1)(C), because arbitration "does not waive the statutory right to be free of age discrimination."  *See* 556 U.S. at 265-66.

Third, Plaintiffs' claim that the Supreme Court in *14 Penn Plaza* "never even quoted the key statutory phrase 'any right or claim'" is disingenuous.  (Opp. 14-15.)  The Supreme Court squarely addressed the meaning of the word "right" as it is "referred to in § 626(f)(1)," citing that provision and *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), several times.  *See 14 Penn Plaza*, 556 U.S. at 259.  Whether the Court quoted § 626(f)(1) in whole or part is entirely irrelevant.

Fourth, Plaintiffs cannot distinguish *14 Penn Plaza* (Opp. 15) on the ground that the "Supreme Court relied on pre-OWBPA case law," such as *Gilmer*.  As an initial matter, and as Plaintiffs acknowledge (Opp. 12 n.18), the Supreme Court decided *Gilmer* in 1991, after Congress passed OWBPA in 1990.  In holding that ADEA claims were subject to *individual*

2

arbitration, the *Gilmer* Court not only considered OWBPA but analyzed its impact.  *See Gilmer*, 500 U.S. at 29 ("Congress, however, did not explicitly preclude arbitration or other nonjudicial resolution of claims, <u>even in its recent amendments to the ADEA</u>.") (emphasis added); *see also id.* at 32 (rejecting claim that "arbitration procedures cannot adequately further the purposes of the ADEA because they do not provide for . . . class actions").

<u>Fifth</u>, Plaintiffs offer no legitimate basis to distinguish *14 Penn Plaza*'s progeny, such as *McLeod v. Gen Mills, Inc.*, 856 F.3d 1160 (8th Cir. 2017), and *Horowitz v. AT&T*, 2018 WL 1942525, *opinion clarified on denial of reconsid.*, 2019 WL 77306 (D.N.J. Jan. 2, 2019). Plaintiffs complain (Opp. 16) that the two cases were decided "[r]elying almost exclusively on *Penn Plaza*."  But a lower court may not be rationally criticized for relying on and applying controlling Supreme Court authority.  *See McLeod*, 856 F.3d at 1164-66; *Horowitz*, 2018 WL 1942525, at *18.

Likewise, Plaintiffs offer no basis to distinguish cases from this Circuit holding—even before *14 Penn Plaza*—that OWBPA's "right or claim" language means a "substantive right." Plaintiffs assert (Opp. 18-19) that *Schappert v. Bedford, Freeman & Worth Pub. Grp., LLC*, 2004 WL 1661073 (S.D.N.Y. July 23, 2004), and *Hart v. Canadian Imperial Bank of Commerce*, 43 F. Supp. 2d 395 (S.D.N.Y. 1999), were "wrongly decided" and "failed to analyze the plain text of the OWBPA."  No court, however, has disapproved of either decision, and both echo the Supreme Court's logic and analysis in *14 Penn Plaza*, as well as the Eighth Circuit's *McLeod* decision and the District of New Jersey's *Horowitz* decision.

<u>Finally</u>, Plaintiffs' cited authorities do not support their position.  Plaintiffs describe *Oubre v. Entergy Ops., Inc.*, 522 U.S. 422 (1998), as "the leading Supreme Court decision on the proper interpretation of the OWBPA."  (Opp. 3.)  However, *Oubre* does not address whether

OWBPA applies to collective action waivers (or other procedural waivers), but whether the

tender-back and ratification doctrines apply when a release is invalid under OWBPA.  *See id.* at

425-26.[1]

Beyond *Oubre*, Plaintiffs cite (Opp. 17-18) two district court orders that pre-date *14 Penn*

*Plaza* – the Eastern District of Virginia's *Hammaker v. Brown & Brown, Inc.*, 214 F. Supp. 2d

575 (E.D. Va. 2002), and the Southern District of California's *Thiele v. Merrill Lynch, Pierce,*

*Fenner & Smith*, 59 F. Supp. 2d 1060 (S.D. Cal. 1999).  "The problem with that argument is that

*14 Penn Plaza* clearly held the opposite [of those cases], implicitly overruling cases like *Thiele*."

*McLeod v. Gen. Mills, Inc.*, 140 F. Supp. 3d 843, 853 (D. Minn. 2015), *rev'd in part on other*

*grounds*, 854 F.3d 420 (8th Cir. 2017), *on reh'g*, 856 F.3d 1160 (8th Cir. 2017); *see Bennett v.*

*Dillard's, Inc.*, 849 F. Supp. 2d 616, 620 (E.D. Va. 2011) ("*Hammaker* was decided before the

decision in *14 Penn Plaza* . . . [t]o the extent *Gilmer* left any doubts about the validity of pre-

dispute arbitration agreements, *14 Penn Plaza* resolved them.").

**B.     Plaintiffs' Textual And Legislative History Arguments Are Inconsistent With
        *14 Penn Plaza* And Fail On Their Own Merits.**

Plaintiffs also assert that OWBPA's language and legislative history support their

argument.  These contentions are foreclosed by *14 Penn Plaza* and are without merit.

**1.     Plaintiffs' "Incorporation" Argument Is Without Merit.**

Plaintiffs contend that § 626(b) "expressly incorporates the full text of Section 216(b)" of

the FLSA (Opp. 6, 8-9), including § 216(b)'s statement that "[t]he right provided by this

---

[1] In *Oubre*, the plaintiff waived "all claims against her employer," in any forum.  522 U.S. at
423.  The parties did not dispute that the release was invalid as to ADEA claims because it failed
to meet a number of OWBPA requirements.  *See id.* at 424-25.  Before the Supreme Court was
the employer's contention that plaintiff Oubre "ratified the ineffective release (or faces
estoppel)" because she "retain[ed] all the sums paid in consideration of it."  *Id.* at 426.

subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint with the Secretary of Labor," 29 U.S.C. § 216(b).  IBM has already shown (Mot. 8) that Congress did not incorporate § 216(b)'s final sentence into the ADEA, but instead adopted a different provision (29 U.S.C. § 626(c)(1)) that specifically describes when a plaintiff's right to bring an ADEA action terminates.  It also showed (Mot. 9) that *14 Penn Plaza* forecloses Plaintiffs' argument even assuming the final sentence's adoption.

In their Opposition, Plaintiffs contend (Opp. 7-8) that because the first sentence of § 626(b) expressly excludes one part of § 216, Congress must have meant to incorporate § 216's entire remainder into the ADEA.  But, as IBM has shown (Mot. 8-9), the last sentence of § 216(b) is a termination clause that could not have been incorporated in light of § 626(c), which is also a termination clause.  Otherwise § 626(c) would be a nullity in violation of the stalwart principle that each term must have meaning.  *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("In construing a statute we are obliged to give effect, if possible, to every word Congress used.").  Indeed, because the two provisions define how actions are terminated differently, they cannot simultaneously co-exist within § 626.

Plaintiffs also contend (Opp. 8) that the § 626(c) termination provision cannot displace the termination provision in the last sentence of § 216(b) because the former "does not even mention collective actions."  This is misdirection on Plaintiffs' part.  The last sentence of § 216(b) and the termination provision in § 626(c) both define when government action ends a private party's ability to pursue a civil action—any civil action.  They differ in defining the government action that cuts off the private cause of action.

5

In any event, *14 Penn Plaza*'s holding that OWBPA applies only to waivers of substantive rights precludes Plaintiffs' interpretation of § 216(b) as incorporated in § 626(b).  If as Plaintiffs claim, § 216(b) is defining "rights" within the meaning of OWBPA, those rights would include, generally, "action[s] . . . in any Federal or State court."  (*See* Mot. 9 (quoting 29 U.S.C. § 216(b)).)  But *14 Penn Plaza* squarely holds that court actions, generally, are not rights under OWBPA and may be waived without regard to OWBPA's requirements.  The mere incorporation of § 216(b) into § 626(b) does not control the latter's meaning without regard to Supreme Court precedent.  *See S.E.C. v. Dorozhko*, 574 F.3d 42, 46 (2d Cir. 2009) ("In construing the text of any federal statute, we first consider . . . the holdings of the Supreme Court . . . which provide definitive interpretations of otherwise ambiguous language.").

### 2.      Plaintiffs' "Language And Context" Arguments Are Without Merit.

Plaintiffs' claim (Opp. 9-13) that OWBPA's language and context demonstrate its application to class action waivers is equally meritless.  At the outset, Plaintiffs place far too much support on the word "any," as used in the phrase "any right or claim under this chapter," 29 U.S.C. § 626(f)(1).  To Plaintiffs (Opp. 9), "any" is "broad and all-encompassing" and means "of whatever kind."  But Plaintiffs divorce the term from the objects it modifies when, in fact, "general words" like "any" must be limited to "those objects to which the legislature intended to apply them."  *U.S. v. Palmer*, 16 U.S. 610, 631 (1818); *see also Small v. U.S.*, 544 U.S. 385, 388 (2005) ("any" cannot answer "whether the statutory reference 'convicted in *any* court' includes a conviction entered in a *foreign* court"); *Nixon v. Missouri Municipal League*, 541 U.S. 125, 132 (2004) ("any" means "different things depending upon the setting"); *U.S. v. Alvarez–Sanchez*, 511 U.S. 350, 357 (1994) (party errs in relying on "any' "without considering the rest of the statute").  Here, the Supreme Court has held that "right" means "substantive right," *14 Penn Plaza*, 556 U.S. at 259, 265-66; thus, the word "any" necessarily modifies a *substantive* right or

claim.  *See Dorozhko*, 574 F.3d at 46.  The term cannot, without more, expand the meaning of "right."

Plaintiffs next argue (Opp. 10) that IBM's interpretation of OWBPA would render § 626(f)(1)'s "right" language "superfluous" because a substantive right is "synonymous with a claim of discrimination."  The Supreme Court has held, however, that a substantive "right" is a privilege provided and protected under law and enforceable through government action, but a "claim" is a private right of action.  *See, e.g.*, *Gilmer*, 500 U.S. at 26 ("[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute.") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

With respect to the "backdrop of case law and statutes" against which Congress enacted OWBPA (Opp. 10-11), Plaintiffs misidentify both the pertinent legal background and its implications.  Prior to OWBPA's enactment, the Supreme Court endorsed arbitration as an efficient means of dispute resolution.  *See, e.g.*, *Rodriguez de Quijas v. Shearson/AmEx, Inc.*, 490 U.S. 477 (1989); *Shearson/AmEx, Inc. v. McMahon*, 482 U.S. 220 (1987); *Mitsubishi Motors*, 473 U.S. at 614.  In doing so, it rejected the argument that arbitration involved a "restriction on substantive rights."  *McMahon*, 482 U.S. at 232.  Rather, "[b]y agreeing to arbitrate a statutory claim," a party "only submits to the[] [claim's] resolution in an arbitral, rather than a judicial, forum."  *Mitsubishi Motors*, 473 U.S. at 628.  The Circuit courts were nonetheless split as to whether ADEA claims were arbitrable.  *Compare Nicholson v. CPC Int'l, Inc.*, 877 F.2d 221 (3d Cir. 1989) (not arbitrable) *with Gilmer v. Interstate/Johnson Lane Corp.*, 895 F.2d 195, 202 (4th Cir. 1990), *aff'd.*, 500 U.S. 26 (1991) (arbitrable).  Ultimately, the Supreme Court agreed with the Fourth Circuit's conclusion in *Gilmer* that arbitration did *not* impact "any right or claim" within the ADEA's meaning.  *See Gilmer*, 500 U.S. at 29.

In light of this history, if Congress intended to *alter* the ADEA and include procedural mechanisms (like arbitration or collective actions) within OWBPA's scope, it would have needed to do so clearly and expressly.  *See Gilmer*, 500 U.S. at 29 ("[I]f Congress intended the substantive protection afforded [by the ADEA] to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history." (alterations in original)); *Dekalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 409 (2d Cir. 2016) ("We assume that Congress is aware of existing law when it passes legislation.").  Plaintiffs identify no such clear and express alteration, and there is none.

Moreover, contrary to Plaintiffs' claims (Opp. 11-13), OWBPA's legislative history does not support their position.  OWBPA's legislative history contains very little discussion of the waiver provision.  The history notes primarily that the section sought "to ensure that older workers are not coerced or manipulated into waiving their rights under [the] ADEA"—that is, into waiving substantive rights conferred by the ADEA.  *See* 136 Cong. Rec. H8614-02 (Oct. 2, 1990).  If, as Plaintiffs argue, Congress intended to <u>change</u> the background rule that the term "rights" means substantive rights or establish that rights include procedural rules like joinder, one would expect <u>something</u> in the legislative history indicating this intent—at least one statement by one congress member expressing this specific intent.  Plaintiffs fail to point to even one.  This silence in the legislative history is fatal to Plaintiffs' reliance on it.

## II.     THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM BECAUSE THE FAA FORECLOSES PLAINTIFFS' INTERPRETATION OF OWBPA.

Plaintiffs' attempts to show that its interpretation of OWBPA is consistent with the Federal Arbitration Act separately fail.  (*See* Mot. 10-12.)  <u>First</u>, Plaintiffs argue (Opp. 19) that their view is consistent with the FAA because "they do not seek to avoid arbitration" but to invite a class action.  But Plaintiffs are seeking to void class action waivers by using OWBPA to

upend the FAA's command that "courts must rigorously enforce arbitration agreements according to their terms." *Am. Ex. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal cites omitted).  They seek (Opp. 19) to proceed either with class arbitration, despite the fact that they agreed not to and that IBM cannot be compelled to submit to class arbitration "unless there is a contractual basis for concluding that the party *agreed* to do so," *Lamps Plus, Inc. v. Varela*, --- U.S. ---, 139 S.Ct. 1407, 1412 (2019) (internal cites and quotes omitted), or with a court action, effecting a complete voiding of their arbitration agreements.

Second, Plaintiffs contend (Opp. 20-22) that "OWBPA's waiver requirements . . . fall within [the FAA's] saving clause."  Not so.  The saving clause provides that a court may refuse to enforce arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract"—that is, state law defenses, *see Epic Sys. Corp. v. Lewis*, --- U.S. ---, 138 S. Ct. 1612, 1624 (2018) (internal cites and quotes omitted) (citing *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 991-92, 997 (9th Cir. 2016) (Ikuta, J., dissenting)).[2]  Where, as here, a party claims that a *federal* statute conflicts with the FAA's mandate, the plaintiff must demonstrate that the statute includes an express "contrary congressional command" overriding the FAA. *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012); *see also Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 295-96 (2d Cir. 2013) (same).

Third, Plaintiffs cannot meet this "heavy" burden of an express contrary command.  *Epic Sys. Corp.*, 138 S. Ct. at 1624.  OWBPA contains, and Plaintiffs identify, no language that the Supreme Court has identified as evincing such a clear intent.  *See id.* at 1626 (citing statutes with

---

[2] Even if the saving clause were available to federal defenses, it would not help Plaintiffs.  In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), the Supreme Court rejected an argument almost identical to Plaintiffs' argument here.  *See* 563 U.S. at 344 ("Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.").

a clear and express, contrary command). The "any right or claim" language upon which

Plaintiffs would rely does not mention arbitration or class procedures, and thus falls well short of

the mark. *See id.* at 1626-27 (noting that Congress does not "hide elephants in mouseholes").

Contrary to Plaintiffs' contentions (Opp. 23-24), OWBPA's history only undercuts their position.

Congress enacted OWBPA long after enacting the FLSA's collective action procedures, and long

after applying certain FLSA enforcement procedures to the ADEA. But the FLSA's collective

action procedures do not override the FAA, as waivers of those procedures in arbitration

agreements are enforceable. *See Epic Sys. Corp.*, 138 S. Ct. at 1626 ("[E]very circuit to consider

the question has held that the FLSA allows agreements for individualized arbitration." (internal

quotation marks omitted)). In view of this history, Congress needed to use clear, express and

specific language to indicate a different intent.

  Finally, Plaintiffs err in contending (Opp. 24) that there is an "inherent conflict between

the underlying purposes of the OWBPA and the FAA's mandate." The Supreme Court has

rejected this kind of argument. *See*, *e.g.*, *Italian Colors Rest.*, 570 U.S. at 237 (noting that the

Court has "no qualms in enforcing a class waiver in an arbitration agreement even though the

[ADEA] expressly permitted collective actions"); *Gilmer*, 500 U.S. at 32 (rejecting argument

that "arbitration procedures cannot adequately further the purposes of the ADEA because they do

not provide for broad equitable relief and class actions").

## CONCLUSION

  For the foregoing reasons, and those stated in IBM's initial brief, the Court should

dismiss Plaintiffs' First Amended Complaint with prejudice.

Dated: October 11, 2019                              Respectfully Submitted,


                                                     By */s/ Matthew W. Lampe*
                                                         Matthew W. Lampe
                                                         Traci L. Lovitt
                                                         Wendy C. Butler
                                                         JONES DAY
                                                         250 Vesey Street
                                                         New York, New York 10281
                                                         Tel: 212.326.3939
                                                         Fax: 212.755.7306
                                                         mwlampe@jonesday.com
                                                         tlovitt@jonesday.com
                                                         wbutler@jonesday.com

                                                         Alison B. Marshall, *admitted pro hac vice*
                                                         JONES DAY
                                                         51 Louisiana Ave., N.W.
                                                         Washington, D.C. 20001
                                                         Tel: 202.879.3939
                                                         Fax: 202.626.1700
                                                         abmarshall@jonesday.com

                                                         Courtney L. Burks, *admitted pro hac vice*
                                                         JONES DAY
                                                         90 S. Seventh Street, Suite 4950
                                                         Minneapolis, MN 55402
                                                         Tel: 612.217.8874
                                                         Fax: 844.345.3178
                                                         cburks@jonesday.com

                                                         *Attorneys for Defendant International*
                                                         *Business Machines Corporation*


11

## **CERTIFICATE OF SERVICE**

I certify that on October 11, 2019, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which sent notification of such filing to the Court and

Plaintiffs' counsel.


/s/ *Matthew W. Lampe*
Matthew W. Lampe