**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STEVEN ESTLE, et al.,

        Plaintiffs,

    v.

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

        Defendant.

Docket No. 1:19-cv-02729

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

SUMMARY ................................................................................................................. 1

BURDEN OF PROOF ................................................................................................. 4

BACKGROUND ......................................................................................................... 4

ARGUMENT .............................................................................................................. 6

I.  IBM's Collective Action Waiver Is Invalid Under The OWBPA's Plain Language ................................................................................................................ 6

II.  Bringing Or Joining A Collective Action Is A "Right" Under The ADEA ...................... 7

III.  The OWBPA Does Not Distinguish Between Substantive And Procedural Rights ........... 9

    A.  The plain language of the OWBPA and the context in which it was enacted demonstrate that it applies to "any" ADEA right, not just "substantive" ones ....................................................................................... 9
    B.  *Penn Plaza* did not address the meaning of the "any right or claim" language in the OWBPA ................................................................................... 13
    C.  This Court should not follow two poorly-reasoned decisions that wrongly applied *Penn Plaza* ........................................................................... 16
    D.  Courts that have analyzed the text of the OWBPA have held that it makes no substantive/procedural distinction .................................................. 17

IV.  The FAA Does Not Preclude A Finding That The Waiver Is Invalid Under The OWBPA ................................................................................................................. 19

    A.  Because Plaintiffs do not seek to avoid arbitration, the FAA's liberal policy favoring arbitration is not disturbed ................................................ 19
    B.  To the extent the FAA applies, the OWBPA is in harmony with the FAA because its waiver requirements fall within the FAA's saving clause ................ 20
    C.  The OWBPA's clear contrary congressional command overrides the FAA's mandate that arbitration agreements be enforced according to their terms ............................................................................................. 22

CONCLUSION .......................................................................................................... 25

# TABLE OF AUTHORITIES

Page

**CASES**

*14 Penn Plaza v. Pyett,*
556 U.S. 247 (2009) .......................................................................... *passim*

*American Elec. Power Co. v. Connecticut,*
564 U.S. 410 (2011) ................................................................................. 18

*American Express Co. v. Italian Colors Restaurant,*
570 U.S. 228 (2013) ............................................................................ 23, 24

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011) ................................................................................. 20

*Barrentine v. Arkansas-Best Freight System, Inc.,*
450 U.S. 728 (1981) ................................................................................. 10

*Brooklyn Savings Bank v. O'Neil,*
324 U.S. 697 (1945) ................................................................................. 10

*Cirillo v. Arco Chemical Co.,*
862 F.2d 448 (3rd Cir. 1988) ................................................................... 12

*Coventry v. U.S. Steel Corp.,*
856 F.2d 514 (3d Cir. 1988) ............................................................... 12, 13

*D.A. Schulte, Inc. v. Gangi,*
328 U.S. 108 (1946) ................................................................................. 10

*Dekalb Cnty. Pension Fund v. Transocean Ltd.,*
817 F.3d 393 (2d Cir. 2016) .................................................................... 10

*Doe v. Columbia Univ.,*
831 F.3d 46 (2d Cir. 2016) ......................................................................... 4

*Epic Sys. Corp. v. Lewis,*
138 S. Ct. 1612 (2018) .................................................................. 20, 22, 23

*Gilmer v. Interstate/Johnson Lane Corp.,*
895 F.2d 195 (4th Cir. 1990) ............................................................ 11, 12, 15

*Hammaker v. Brown & Brown, Inc.,*
214 F. Supp. 2d 575 (E.D. Va. 2002) .................................................. 17, 18

# TABLE OF AUTHORITIES

Page

*Harrison v. PPG Industries, Inc.*,
 446 U.S. 578 (1980).................................................................................................9

*Hart v. Canadian Imperial Bank of Commerce*,
 43 F.Supp. 2d 395 (S.D.N.Y. 1999)..............................................................18, 19

*Hassett v. Welch*,
 303 U.S. 303 (1938).................................................................................................7

*Horowitz v. AT&T Inc.*,
 2018 WL 1942525 (D.N.J. Apr. 25, 2018), *opn. clarified on denial of
 reconsid.*, 2019 WL 77306 (D.N.J. Jan. 2, 2019) ...........................................16, 17

*Lorillard v. Pons*,
 434 U.S. 575 (1978).................................................................................................8

*McLeod v. Gen. Mills, Inc.*,
 856 F.3d 1160 (8th Cir. 2017) ........................................................................16, 17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
 473 U.S. 614 (1985)...............................................................................................22

*Nicholson v. CPC Int'l Inc.*,
 877 F.2d 221 (3d Cir. 1989)...................................................................................11

*Oubre v. Entergy Operations, Inc.*,
 522 U.S. 422 (1998).......................................................................................*passim*

*Saks v. Franklin Covey Co.*,
 316 F.3d 337 (2d Cir. 2003)....................................................................................2

*Schappert v. Bedford, Freeman & Worth Pub. Grp., LLC*,
 2004 WL 1661073 (S.D.N.Y. July 23, 2004) .................................................18, 19

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
 659 F.3d 234 (2d Cir. 2011)...................................................................................11

*Shearson/American Express v. McMahon*,
 482 U.S. 220 (1987)...............................................................................................22

*Sorenson v. Sec. of the Treas.*,
 475 U.S. 851 (1986).................................................................................................9

*St. Martin Evangelical Lutheran Church v. South Dakota*,
 451 U.S. 772 (1981).................................................................................................8

# TABLE OF AUTHORITIES

Page

*Sutherland v. Ernst & Young LLP*,
    726 F.3d 290 (2d Cir. 2013)...................................................................................11

*Syverson v. International Business Machines Corp.*,
    461 F.3d 461 F.3d 1147, 1151 (9th Cir. 2006) (amended January 3, 2007).....................1, 4, 5

*Thiele v. Merrill Lynch, Pierce, Fenner & Smith*,
    59 F. Supp. 2d 1060 (S.D. Cal. 1999) ...............................................................17, 18

*United States v. Balde*,
    927 F.3d 71 (2d Cir. 2019)....................................................................................2, 9

*United States v. Gonzales*,
    520 U.S. 1 (1997).................................................................................................2, 9

*United States v. Harris*,
    838 F.3d 98 (2d Cir. 2016)......................................................................................10

*United States v. Rowland*,
    826 F.3d 100 (2d Cir. 2016).....................................................................................9

*Williams v. Cigna Fin. Advisors, Inc.*,
    56 F.3d 656 (5th Cir. 1995) ...............................................................................18, 19

*In re WorldCom, Inc.*,
    723 F.3d 346 (2d Cir. 2013)......................................................................................8

**STATUTES**

9 U.S.C. § 2 ............................................................................................................3, 20

29 U.S.C. §216(c) ...................................................................................................10, 11

29 U.S.C. § 621 .............................................................................................................1

29 U.S.C. 626 .......................................................................................1, 2, 4, 6, 7, 8, 9, 17

**OTHER AUTHORITIES**

Brief for Petitioners, *14 Penn Plaza LLC v. Pyett*,
    No. 07-581, 2008 WL 1989715 (May 5, 2008). ....................................................13

Brief for Respondents, *14 Penn Plaza v. Pyett*, No. 07-581,
    2008 WL 2774462 (July 14, 2008)...........................................................................14

iv

# TABLE OF AUTHORITIES

Page

H.R. Rep. 101-664 (1990) *reprinted in* 1990 U.S.C.C.A.N. ........................................................1, 8

S. Rep. 101-79, 101st Cong., 1st Sess. (1989)...........................................................................1

S. Rep. 101-263 (1990), *reprinted in* 1990 U.S.C.C.A.N.........................................1, 4, 11, 12, 13

Webster's Third New International Dictionary 97 (1976)..............................................................9

**SUMMARY**

When Congress enacted the Older Workers Benefit Protection Act[1] in 1990, it expressly

sought to remedy, among other inequities, the widespread injustice of older workers being

disproportionately targeted for termination as part of a group layoff and "coerced" into waiving

their rights and claims under the ADEA,[2] the federal law prohibiting age discrimination in

employment:

> Group termination and reduction programs stand in stark contrast to the individual
> separation. . . . [E]mployees affected by these programs have little or no basis to
> suspect that action is being taken based on their individual characteristics. . . .
> Under these circumstances, the need for adequate information and access to
> advice before waivers are signed is especially acute. . . . [O]nce out of work, these
> older Americans have less than a 50/50 chance of ever finding new employment.
> They often have little or no savings, and may not yet be eligible for Social
> Security benefits. Accordingly, it is reasonable to assume that many employees
> would be **coerced** by circumstances into accepting significant compromises.[3]

To combat this pernicious use of group layoffs to coerce mass waivers and cover up

systemic age discrimination, Congress carefully crafted "a strict, unqualified statutory stricture

on waivers." *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998).  The OWBPA sets

minimum disclosure and waiting-period requirements for employers to obtain a valid waiver of

"**any** right or claim" under the ADEA, with heightened protections for employees laid off as a

group.  29 U.S.C. § 626(f) (emphasis added).  As the Supreme Court has explained, "[t]he

---

[1]  Older Workers Benefit Protection Act ("OWBPA"), § 201, 104 Stat. 983, 29 U.S.C. § 626(f).

[2]  Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*

[3]  S. Rep. No. 101-263 (101st Cong., 2nd Sess. 1990) (emphasis added), reprinted in 1990
U.S.C.C.A.N. 1509, 1537-38; *see also* H.R. Rep. 101-664 (101st Congress, 2nd Sess.1990)
("The House and Senate hearing records are replete with evidence of older workers who have
been manipulated or **coerced** into waiving their rights under the ADEA.) (emphasis added); S.
Rep. 101-79, at 9 (1989); *Syverson v. International Business Machines Corp.*, 461 F.3d 461 F.3d
1147, 1151 (9th Cir. 2006) (amended January 3, 2007) (citing S. Rep. No. 101-263, at 5 (1990)).

1

OWBPA sets up its own regime for assessing the effect of ADEA waivers, separate and apart from contract law . . . [and] creates a series of pre-requisites for knowing and voluntary waivers." *Oubre*, 522 U.S. at 427.

The text of the ADEA explicitly incorporates the statutorily defined "right" of aggrieved employees to bring or join a collective action, and thus that right is governed by the OWBPA's strict waiver provisions. 29 U.S.C. §§ 626(b), 626(f)(1). IBM's waiver, which required Plaintiffs to waive their ADEA collective action rights but failed to comply with the OWBPA's minimum disclosure and waiting-period requirements ("anti-coercion requirements"), is therefore invalid under the plain text of the OWBPA.

IBM's motion to dismiss rests on a fundamental misunderstanding of statutory interpretation. As the Second Circuit has repeatedly instructed, "[e]very exercise in statutory construction must begin with the words of the text," *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003), and when the text is unambiguous, the Court's analysis "presumptively ends there," *United States v. Balde*, 927 F.3d 71, 75 (2d Cir. 2019). Nevertheless, IBM disregards the statutory text, refusing to even acknowledge that the words "right or claim" in the OWBPA are prefaced by the highly significant intensifier "any." 26 U.S.C. § 626(f). By contrast, the Supreme Court has read the modifier "any" as having "an expansive meaning" and has relied on its use to justify an especially broad interpretation of a statutory term.[4]

Instead of starting with the plain meaning of the statutory text, IBM asserts that this case "begins and ends" with the Supreme Court's decision in *14 Penn Plaza v. Pyett*, 556 U.S. 247 (2009). Mot. 2. It does not. The *Penn Plaza* decision does not address whether the OWBPA

---

[4] *United States v. Gonzales*, 520 U.S. 1, 5 (1997).

applies to the circumstances presented here: the purported waiver of the right under the ADEA to pursue a collective action.  And it never mentions the Federal Arbitration Act ("FAA"), which IBM incorrectly asserts is dispositive here.  IBM wrongly claims that "[i]n *14 Penn Plaza LLC v. Pyett,* the Supreme Court **held** that OWBPA's 'right or claim' language means a 'substantive right,' not a procedural right."  Mot. 2 (emphasis added).  To the contrary, the Supreme Court stated its holding as follows: "We hold that a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law."  556 U.S. at 274.  IBM ultimately admits that "only two courts . . . have considered whether collective action waivers are subject to OWBPA" and one is an unpublished district court decision and both are from other circuits.  Mot at 1.

Although IBM discusses eighteen cases in its motion, it fails to ever mention the leading Supreme Court decision on the proper interpretation of the OWBPA: *Oubre*, 522 U.S. at 422.  In *Oubre*, the Supreme Court interpreted the OWBPA based on its "clear" statutory language, concluding that it was "bound to take Congress at its word." *Id*. at 427-28.  Thus, *Oubre* provides more useful guidance on how to interpret the OWBPA than does *Penn Plaza*.

After unpersuasively arguing that *Penn Plaza* is dispositive of Plaintiffs' OWBPA claims, IBM makes a second erroneous argument: that the OWBPA's anti-coercion requirements for a valid waiver are nullified by the FAA.  Plaintiffs do not seek to avoid arbitration, and thus the FAA's liberal policy favoring arbitration is not implicated here.  Even if the FAA were applicable, the OWBPA's waiver requirements—which apply equally to all contracts and thus do not disfavor arbitration—fall squarely within the FAA's saving clause, which requires courts to refuse to enforce arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Under the OWBPA, employers are completely free to

require their employees to arbitrate their federal age discrimination claims individually, so long as they meet the anti-coercion requirements that apply equally to the waiver of "any right or claim" under the ADEA.  In the alternative, to the extent the OWBPA and the FAA conflict—and they do not—the OWBPA imposes a clear contrary congressional command by mandating heightened pre-requisites for a knowing and voluntary waiver of ADEA rights and claims, which in this narrow respect overrides the FAA's general mandate that arbitration agreements be enforced according to their terms.

Accordingly, IBM's motion to dismiss should be denied.

## BURDEN OF PROOF

Because IBM is "the party asserting the validity of the waiver," it "bears the burden of proof" under the OWBPA.  *Syverson*, 461 F.3d at 1151 (citing 29 U.S.C. § 626(f)(3)); *see also* S. Rep. No. 101-263 (101st Cong., 2nd Sess. 1990), *reprinted in* 1990 U.S.S.C.A.N. 1509, 1540-41 (emphasizing that "[a] waiver of rights or a release of claims is generally available as an affirmative defense" and thus "[t]he party relying on the defense has the burden of showing its scope and its applicability to the matter at hand").  In addition, the Court must accept as true all facts alleged in the complaint, "drawing all reasonable inferences in the plaintiff's favor." *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016) ("The issue is simply whether the facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim.").

## BACKGROUND

Between 2001 and 2013, IBM consistently provided the OWBPA comparator information when it included waivers of ADEA rights or claims in severance agreements offered to employees selected for a group layoff.[5]  For example, in a 2001 group layoff IBM "issued

---

[5] Dkt. 35, Am. Compl., at ¶¶4, 35-36.

each selected employee a lengthy document . . . which details the job titles, ages, and numbers of those employees selected and those not selected for termination from various IBM divisions." *Syverson*, 461 F.3d at 1149.  In each of at least a dozen group layoffs between 2001 and the end of 2013, IBM consistently provided employees selected for layoff with the OWBPA comparator information.[6]

In 2014, however, IBM abruptly stopped its long practice of complying with the anti-coercion requirements of the OWBPA and ceased providing the OWBPA comparator information to employees it laid off.[7]  This about-face coincided with IBM's company-wide project to "correct [its] seniority mix."[8]  As its former Vice President of Human Resources has recently testified, the purpose of this project was to appear to be a "cool, trendy organization" instead of "an old fuddy duddy organization."[9]  Yet, IBM still required its laid-off workers, including Plaintiffs, to sign a waiver of the collective action right as a condition of receiving any severance payment or health insurance benefits.[10]  In doing so, IBM sought to have its cake and eat it too: it would deprive its workers of the essential economies and advantages of pursuing their ADEA claims together, while also withholding the information those workers needed to determine whether they had ADEA claims.[11]

Plaintiffs were all over 55 when IBM laid them off in May 2016.[12]  With misgivings, but facing the prospect of a difficult job search and economic hardship, they each reluctantly signed

---

[6] *Id.*

[7] *Id.* at ¶¶5, 37, 52.

[8] *Id.* at ¶5.

[9] *Id.* at ¶5.

[10] *Id.* at ¶¶5, 9.

[11] *Id.* at ¶7.

[12] *Id.*  at ¶9.

the waiver.[13]  After later learning of compelling evidence that IBM engaged in systemic age discrimination—the type of evidence that the OWBPA comparator information would have provided—Plaintiffs filed this action to be relieved of the illegal waivers they executed and be permitted to pursue their age discrimination claims collectively, either in arbitration or in court.

## ARGUMENT

## I.   IBM'S COLLECTIVE ACTION WAIVER IS INVALID UNDER THE OWBPA'S PLAIN LANGUAGE.

The OWBPA provides that an employee may not waive "any right or claim under [the ADEA]" unless the waiver is "knowing and voluntary." 26 U.S.C. § 626(f).  And the waiver of that right or claim "may not be considered knowing and voluntary" unless the enumerated anti-coercion requirements are met.  29 U.S.C. § 626(f); *see Oubre*, 522 U.S. at 427.  In turn, the ADEA expressly incorporates the full text of section 216(b) of the FLSA, which identifies as a "right" both (1) bringing an action "for and in behalf of himself . . . and other employees similarly situated" and (2) "becom[ing] a party plaintiff to any such action." 29 U.S.C. § 216(b), *incorporated by*, 29 U.S.C. §626(b).  Thus, unlike most other federal employment statutes, which are silent as to class or collective procedures, the ADEA states that covered employees have an explicit statutory "right" to bring or join a collective action.

Because IBM did not meet the OWBPA's strict non-coercion requirements, its attempt to extract a waiver of Plaintiffs' collective action right under the ADEA is invalid under the plain language of the OWBPA.  *Oubre*, 522 U.S. at 428 ("It suffices to hold that the release cannot bar the ADEA claim because it does not conform to the statute").

---

[13] *Id*. at ¶11.

## II.   BRINGING OR JOINING A COLLECTIVE ACTION IS A "RIGHT" UNDER THE ADEA.

IBM raises two erroneous objections to Plaintiffs' straightforward textual argument that the right to bring or join a collective action is a "right" under the ADEA.  **First**, IBM argues that, because the OWBPA applies to waivers of "any right or claim under this chapter" (i.e. the ADEA) and because the description of the collective action "right" is borrowed from section 216(b) of the FLSA, which is in a different chapter of the U.S. Code, the right to bring a collective action is not a right "under this chapter."  Mot. at 9 n.3.  However, the ADEA expressly incorporates the language of section 216(b), the effect of which "is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute." *Hassett v. Welch*, 303 U.S. 303, 314 (1938).  The language identifying the collective action "right" is therefore part of the ADEA and part of "this chapter."

**Second**, IBM asserts that although the ADEA expressly incorporates the text of section 216(b), it actually does not incorporate *all* of section 216(b) but instead incorporates only the first part of that section, not the clause that refers to bringing or joining a collective action as a "right."  But a careful examination of the statute belies IBM's interpretation.  When Congress incorporated section 216 by reference, it expressly excluded section 216(a), demonstrating that it knew how to exclude a statutory provision when it intended to do so.  *See* 29 U.S.C. § 626(b).  In these precise circumstances, the Supreme Court has ruled that the "selectivity that Congress exhibited [in enacting the ADEA] in incorporating provisions and in modifying certain FLSA practices strongly suggests that but for those changes Congress expressly made, it intended to

incorporate fully the remedies and procedures of the FLSA." *Lorillard v. Pons*, 434 U.S. 575, 582 (1978).[14]

Moreover, the provision of section 216(b) describing bringing or joining a collective action as a "right" is not displaced by section 626(c) of the ADEA as IBM claims. *See* Mot. at 8. Section 626(c) addresses where and when a civil action under the ADEA may be brought—"in any court of competent jurisdiction" and until "the commencement of an action by the Equal Employment Opportunity Commission." 29 U.S.C. §626(c). It does not even mention collective actions.

IBM's interpretation of the statute would violate the well-established canon against implied repeal, which provides that "indefinite congressional expressions cannot negate plain statutory language and cannot work a repeal or amendment by implication," *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 788 (1981), and the corollary principle that "the preferred meaning of a statutory provision is one that is consonant with the rest of the statute," *In re WorldCom, Inc.*, 723 F.3d 346, 355 (2d Cir. 2013). Congress expressly incorporated the entirety of section 216(b)—including the "right" to bring or join a collective action in section 216(b)—into the OWBPA, and it did not indicate any intent to repeal that provision through language in a different subsection that does not even mention collective actions. And "in the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Id.* Even if, as IBM argues, the later-enacted section 626(c) were interpreted to be irreconcilable with certain parts of section 216(b) governing where and when to bring a claim,

---

[14] When enacting the OWBPA, Congress endorsed the *Lorillard* Court's understanding that Congress intended the ADEA to incorporate fully the remedies and procedures of the FLSA "but for those changes Congress expressly made." H.R. Rep. 101-664 (Aug. 3, 1990) (quoting this language in *Lorillard* and referring to it as "unequivocal" and "highly instructive").

it would at most override only those particular provisions, not the provision discussing the

collective action "right."

## III.    THE OWBPA DOES NOT DISTINGUISH BETWEEN SUBSTANTIVE AND PROCEDURAL RIGHTS.

The plain language of the OWBPA, its legislative history, and its purpose all refute

IBM's central contention that the OWBPA distinguishes between so-called "substantive" and

"procedural" rights.

### A.    The plain language of the OWBPA and the context in which it was enacted demonstrate that it applies to "any" ADEA right, not just "substantive" ones.

On its face, the OWBPA applies to the waiver of "*any* right or claim" under the ADEA.

The ordinary meaning of the word "any" is broad and all-encompassing: "Read naturally, the

word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"

*United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International

Dictionary 97 (1976)); *see also United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016)

("Where . . . there is no statutory definition of a term, we consider 'the ordinary, common-sense

meaning of the words.'").  The Supreme Court has repeatedly interpreted the statutory term

"any" to mean of whatever kind.[15]

Because the text of the OWBPA is "absent ambiguity," the Court's analysis

"presumptively ends there." *Balde*, 927 F.3d at 75; *see also Oubre* at 426-27 (ruling that,

---

[15] *See, e.g.*, *Gonzales*, 520 U.S. at 5 (interpreting the phrase "any term of imprisonment" to mean all types of sentences, not just federal sentences, notwithstanding reference to federal crimes elsewhere in the statute); *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 588–89 (1980) (holding that the phrase "any other final action" was not limited to a particular type of agency action).  Indeed, elsewhere in the OWBPA, Congress used the term "any" to mean "every," providing that "[a]ny person aggrieved may bring a civil action."  29 U.S.C. § 626(c)(1); *see Sorenson v. Sec. of the Treas.*, 475 U.S. 851, 860 (1986) ("The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning.") (internal quotation marks omitted).

because the OWBPA's "statutory command is clear," the Court is "bound to take Congress at its
word"). Nonetheless, other tools of statutory construction further support the conclusion that
when Congress said "any," it meant it. **First**, interpreting the OWBPA to mean any *substantive*
right or claim would render the word "right" superfluous because a substantive right under the
ADEA is synonymous with a claim for discrimination. *See United States v. Harris*, 838 F.3d 98,
104 (2d Cir. 2016) ("Established canons of statutory construction ordinarily suggest that terms
connected by a disjunctive be given separate meanings.") (internal citation omitted).

   **Second**, Congress enacted the broad "any right or claim" language in the OWBPA
against the backdrop of case law and statutes drawing a careful distinction between waiver of
substantive and procedural rights, and yet chose not to incorporate that distinction in the
OWBPA. *See Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 409 (2d Cir. 2016)
("We assume that Congress is aware of existing law when it passes legislation."). Decades
before either the ADEA or the OWBPA were enacted, the Supreme Court developed the
common law rule that certain "substantive" statutory rights under the FLSA could not be waived
at all without court supervision.[16] Congress then codified this non-waivability rule in the FLSA,
not by using a broad phrase like "any right or claim," but by expressly identifying three specific
rights that cannot be waived without supervision: the core FLSA rights to "unpaid minimum
wages or unpaid overtime compensation and an additional equal amount as liquidated damages."
Fair Labor Standards Act Amendments of 1949, P.L. 49-393, codified at 29 U.S.C. §216(c).
With this clear statutory and Supreme Court guidance, courts have long held that the critical
"substantive" FLSA rights enumerated in the statute cannot be waived without court or DOL
supervision, but that a separate class of "procedural" rights can be waived. *See, e.g., Barrentine*

---

[16] *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945); *D.A. Schulte, Inc. v. Gangi*, 328
U.S. 108, 114 (1946).

*v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981) ("This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and overtime pay under the Act."); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 297, n.6 (2d Cir. 2013).[17]

Despite full awareness of the FLSA case law and statutory provisions distinguishing between substantive and procedural rights, in 1990 Congress chose *not* to similarly limit the OWBPA's waiver provisions to a subset of rights under the ADEA. Indeed, Congress expressly acknowledged that the OWBPA "[wa]s a substantial departure from the [waiver] requirements of section 216(c) of the Fair Labor Standards Act." S. Rep. No. 101-263, *reprinted in* 1990 U.S.C.C.A.N. 1509, 1537. Instead, Congress chose to *allow* waivers of "*any* right or claim" under the ADEA, but only if strict anti-coercion requirements were met. *See id.* ("[T]he Committee intends that the [disclosure and waiting-period] requirements be strictly interpreted to protect those individuals covered by the Act. The unsupervised waiver must be knowing and voluntary.").

**Third**, the legislative history establishes that Congress enacted the OWBPA in part to resolve a debate that had developed among the lower courts over whether and how ADEA rights could be waived. *Compare Nicholson v. CPC Int'l Inc.*, 877 F.2d 221, 230 (3d Cir. 1989) (holding that ADEA prohibited waiver of right to a judicial forum), *with Gilmer v.*

---

[17] IBM cites *Sutherland* and *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011), for the proposition that, because the collective action right is not a "substantive" right, it is not covered by the OWBPA. But these cases, decided under the FLSA, merely stand for the unremarkable proposition that the collective action right is not one of the rights enumerated in the text of the FLSA as non-waivable without court or Department of Labor supervision. *See Sutherland*, 726 F.3d at 297 n.6 (reasoning that, because there is "nothing in the text of the FLSA" designating the collective action right as non-waivable, "the FLSA collective action 'right' is a waivable procedural mechanism, not a 'non-waivable, substantive right'"). They have no bearing on whether the statutory phrase "any right or claim" in the OWBPA encompasses the right to a collective action.

11

*Interstate/Johnson Lane Corp.*, 895 F.2d 195, 198 (4th Cir. 1990) (holding that ADEA allowed waiver of right to judicial forum because prohibition on unsupervised waivers applied only to "substantive rights").[18]  By creating a comprehensive statutory scheme governing the waiver of "any" ADEA rights or claims, Congress definitively rejected the approach of courts that had held that waiver protections applied only to "substantive" rights.

       In doing so, Congress expressly adopted circuit court decisions that rejected the per se rule against unsupervised releases that courts had borrowed from the FLSA and held instead that any ADEA right could be waived, but only so long as specific threshold requirements were met and the waiver was shown to be "knowing and voluntary."  S. Rep. No. 101-263, *reprinted in* 1990 U.S.C.C.A.N. 1509, 1537 (explicitly approving approach taken by the Third Circuit in *Cirillo v. Arco Chemical Co.*, 862 F.2d 448 (3rd Cir. 1988), which in turn relied on *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 523-24 (3d Cir. 1988)).[19]  Unlike decisions adopting the categorical ban on waivers, the line of cases approved by Congress made no distinction between "substantive" and "procedural" rights.  Indeed, the Third Circuit decision in *Coventry*—which formed the basis for the *Cirillo* decision expressly approved of by Congress—involved a waiver of the right to participate in a collective action, yet the court did not distinguish that right from

---

[18] *Gilmer* was later affirmed by the Supreme Court, which enforced the arbitration agreement after concluding that, in the ADEA, Congress "did not explicitly preclude arbitration or other nonjudicial resolution of claims." 500 U.S. 20, 29 (1991).  Although the Supreme Court issued its decision in *Gilmer* after the OWBPA was enacted, the OWBPA did not apply to the arbitration agreement at issue, which was agreed to in 1987, because the OWBPA did not retroactively apply to waivers that occurred before it was enacted.  *See* Pub. L. 101-433, § 201 ("The amendment made by section 201 shall not apply with respect to waivers that occur before the date of enactment of this Act.").  Thus, the opinion in *Gilmer* applied pre-OWBPA case law and merely noted the new language of the OWBPA without interpreting it.  *See* 500 U.S. at 28 & n.3.

[19] The anti-coercion requirements adopted by Congress in the OWBPA, 29 U.S.C. §626(f), were expressly drawn from the factors identified by these courts as relevant for deciding whether an ADEA waiver was knowing and voluntary.  *See Coventry*, 856 F.2d at 523.

the other ADEA rights at issue. *Coventry*, 856 F.2d at 516 (holding that the waiver of right "to

be a member of any class seeking relief" was invalid under the ADEA); S. Rep. No. 101-263,

*reprinted in* 1990 U.S.C.C.A.N. 1509, 1537.

In short, when Congress enacted the OWBPA, it had before it an array of different

approaches taken by circuit courts to waivers of rights under the ADEA, and it chose to reject the

substantive/procedural distinction in favor of a more comprehensive approach: a waiver of "*any*

right or claim," including so-called procedural rights, must be "knowing and voluntary."

**B.**   ***Penn Plaza* did not address the meaning of the "any right or claim" language
 in the OWBPA.**

Contrary to IBM's assertion, the Supreme Court did *not* hold in *Penn Plaza* "that

OWBPA's 'right or claim' language means a 'substantive right,' not a procedural right."  Mot. at

1.  *Penn Plaza* never even quoted—let alone examined—the key "any right or claim" language

in the OWBPA, and never decided whether the OWBPA was limited to substantive rights

because the parties never presented that argument to the Court.

**First,** the narrow question addressed by *Penn Plaza* had nothing to do with waiver of the

statutory right to bring an ADEA claim collectively, which is at the heart of this case.  Indeed,

the *Penn Plaza* respondents **had** the opportunity to collectively arbitrate the adverse action they

suffered.  Instead, the question presented in *Penn Plaza* was whether an arbitration clause in a

collective bargaining agreement negotiated between a union and an employer could waive an

individual union member's right to file suit in a judicial forum.  *See* Brief for Petitioners, *14

Penn Plaza LLC v. Pyett*, No. 07-581, 2008 WL 1989715 (May 5, 2008).  The Supreme Court

held "that a collective-bargaining agreement that clearly and unmistakably requires union

members to arbitrate ADEA claims is enforceable as a matter of law," *id.* at 274, reversing the

Second Circuit's holding that, although individuals could waive their right to a judicial forum,

the union could not do the same through a collective bargaining agreement.  The parties' briefs

and the Supreme Court's opinion focused on case law from the union collective bargaining

context, which is plainly inapplicable here.

**Second**, *Penn Plaza* carefully emphasized that it was limiting its holding to the

arguments advanced and briefed by the parties.  *Penn Plaza*, 556 U.S. at 273 (declining to

address respondents' alternative argument about whether "the CBA operates as a substantive

waiver of their ADEA rights" because "it was not fully briefed to this or any courts and is not

fairly encompassed within the question presented"); *see also id*. (refusing to consider

"respondents' alternative arguments for affirmance" because they were not raised below and thus

were "forfeited"). The respondents in *Penn Plaza* never made anything like the argument

advanced by Plaintiffs here—that the statutorily defined "right" to pursue a collective action

under the ADEA cannot be waived without compliance with the OWBPA's anti-coercion

requirements.  They never even argued that the OWBPA's requirements applied to anything

other than "substantive" rights.  Brief for Respondents at 31, *14 Penn Plaza v. Pyett*, No. 07-581,

2008 WL 2774462 (July 14, 2008).  To the contrary, the respondents conceded from the outset

that the substantive/procedural right distinction developed in the pre-OWBPA case law governed

their claims, and they argued only that they had been forced to waive their "substantive" rights.

*Id.*

**Third**, in the brief passage of *Penn Plaza* on which IBM's entire argument hinges, the

Supreme Court never even quoted the key statutory phrase "any right or claim," and so could not

possibly have been interpreting the meaning of that textual phrase.  Mot. At 7 (citing 556 U.S. at

259).  Instead, the Supreme Court was explicitly addressing an argument conceding that the pre-

OWBPA substantive/procedural framework governed the respondents' claims:

"Respondents incorrectly counter that an individual employee must personally 'waive' a '[substantive] right' to proceed in court for a waiver to be 'knowing and voluntary' under the ADEA." 556 U.S. at 259.  The Supreme Court relied on pre-OWBPA case law, including *Gilmer*, to reject the narrow argument that the right to a judicial forum was a "substantive right." 556 U.S. at 259; *see also id.* at 273 (citing *Gilmer* for the proposition that "a substantive waiver of federally protected civil rights will not be upheld").

Similarly, again responding to the respondents' narrow argument that the right to a judicial forum was a "substantive right" under the pre-OWBPA framework, the Supreme Court stated that "if the 'right' referred to in § 626(f)(1) included the prospective waiver of the right to bring an ADEA claim in court, even a waiver signed by an individual employee would be invalid as the statute also prevents individuals from 'waiv[ing] rights or claims that may arise after the date the waiver is executed.'"  *Penn Plaza*, 556 U.S. at 259.  Again, this sentence refers back to the pre-OWBPA substantive/procedural framework on which the respondents relied: the Supreme Court explained that if it accepted the argument that the right to bring a claim in court was a "substantive right" that could not be waived prospectively at all, that conclusion would conflict with the Court's pre-OWBPA case law, specifically *Gilmer*, which stated that the right to bring a claim in court could be prospectively waived because it was not a "substantive right."[20]

In short, IBM's motion repeatedly mischaracterizes the Supreme Court's holding in *Penn Plaza*.  Mot. at 1, 7, 9.  The *Penn Plaza* Court did not address the meaning of "any right or claim" in the OWBPA because that question was not before it: the respondents had asserted only

---

[20] In any event, this discussion in *Penn Plaza* does not apply here because Plaintiffs are not arguing that their right to a collective action cannot be waived prospectively but only that the waiver of this right must comply with the non-coercion requirements in the OWBPA.

that the collective bargaining agreement was a waiver of *substantive* rights in violation of the OWBPA.  Thus, *Penn Plaza* provides no basis for this Court to depart from the plain meaning of the statutory language of "any right or claim" in the OWBPA.  *See Oubre,* 522 U.S. at 426-427 (because the text of the OWBPA is "clear" and "forecloses the employer's defense," the Court is "bound to take Congress at its word").

### C.    This Court should not follow two poorly-reasoned decisions that wrongly applied *Penn Plaza.*

Relying on two out-of-circuit decisions—one of which is an unpublished opinion from the District of New Jersey—IBM asserts that "multiple courts" have held that the OWBPA does not apply to the right to bring or join a collective action.  *See* Mot. at 9 (citing *McLeod v. Gen. Mills, Inc.*, 856 F.3d 1160 (8th Cir. 2017); *Horowitz v. AT&T Inc.*, 2018 WL 1942525 (D.N.J. Apr. 25, 2018), *opn. clarified on denial of reconsid.*, 2019 WL 77306 (D.N.J. Jan. 2, 2019)).  But these two cases rely on fundamentally flawed reasoning that both ignores the plain statutory text and misinterprets *Penn Plaza*'s holding.

Relying almost exclusively on *Penn Plaza*, which it found to be "largely controll[ing]," the *McLeod* court concluded that the right to a jury trial and the right to bring or join a collective action were not "substantive" rights and therefore the OWBPA's restrictions on waivers did not refer to those rights.  856 F.3d at 1164-65.  The court mischaracterized *Penn Plaza* as holding that the OWBPA's reference to "any right or claim" means only "substantive rights to be free from age discrimination, not procedural 'rights' to pursue age discrimination claims in court." *Id.* at 1165.  But, as described in detail above, that is not the holding of *Penn Plaza*; the Supreme Court did not interpret the meaning of the critical statutory language of "any right or claim" in

the OWBPA.[21]  Similarly, the unpublished district court decision in *Horowitz* relied exclusively on *McLeod* and *Penn Plaza*, and it did not conduct its own analysis of the statutory language. 2018 WL 1942525, at *20.

### D.      Courts that have analyzed the text of the OWBPA have held that it makes no substantive/procedural distinction.

When courts have taken the time to perform a careful analysis of the OWBPA's text and history, they have persuasively concluded that "any right or claim" means both substantive and procedural rights.  *See Hammaker v. Brown & Brown, Inc.*, 214 F. Supp. 2d 575 (E.D. Va. 2002); *Thiele v. Merrill Lynch, Pierce, Fenner & Smith*, 59 F. Supp. 2d 1060 (S.D. Cal. 1999).

In *Hammaker*, for example, the court "employ[ed] the tools of statutory construction" to conclude that "the waiver requirements imposed by the OWBPA appl[y] to both procedural and substantive rights." 214 F. Supp. 2d at 580.  The court cogently reasoned that the phrase "any right or claim" in the statute was "plain and unambiguous" and that, because of Congress's use of the word "any," it "should be read to apply to all rights conferred by the ADEA, including the right to a jury trial":

> The statute does not impose any qualifiers upon the applicability of the waiver requirements except that it be applied to rights conferred under the statute.  If Congress wanted the protections of the OWBPA to apply only to substantive rights, Congress could have adopted language that clearly conveyed such an intent.

---

[21] *McLeod* is also distinguishable in two key respects.  First, the *McLeod* plaintiffs argued that under 29 U.S.C. 626(f)(3), their challenge to the validity of the waiver of the right to proceed collectively must be brought in court, not in arbitration as provided by the arbitration agreement they had signed.  Thus, unlike Plaintiffs—who signed an agreement providing that all challenges to the validity of the collective action waiver would be decided by a court—the plaintiffs in *McLeod* were seeking to have a court override an agreement to arbitrate before the court could even address whether the waiver of the right to proceed collectively was valid.  *Id.* at 1166.  Second, *McLeod* quickly rejected the argument that section 216(b) created a collective action "right," reasoning that the first clause of that section was a "class-action authorization that can be waived by a valid arbitration agreement," but never addressing the argument advanced by Plaintiffs here that the second clause of section 216(b) explicitly refers to bringing or joining a collective action as a "right." *Id.*

17

*Id.* at 580-81. The court found such a reading consistent with the broad use of the term "any" elsewhere in the chapter and "with the OWBPA's purpose to protect the rights and benefits of older workers." *Id.* at 580.  Likewise, in *Thiele*, the court held that "the plain language of this statute requires that waivers of any statutory ADEA rights," including so-called "procedural rights," "must meet the § 626(f)(1) requirements." 59 F.Supp. 2d at 1064.  The Court should follow this well-reasoned textual approach to conclude that the OWBPA means what it says: "any right or claim" means any right, not just "substantive" rights.  Indeed, this laser focus on the statutory language is exactly how the Supreme Court interpreted the OWBPA in its leading decision on that statute.  *See Oubre*, 522 U.S. at 426-427.

The two other district court cases relied on by IBM are not binding and should be rejected because they are wrongly decided and based on reasoning that is inapplicable here.[22]  *See* Mot. at 5-6 (quoting *Schappert v. Bedford, Freeman & Worth Pub. Grp., LLC*, 2004 WL 1661073, at *10 (S.D.N.Y. July 23, 2004) and *Hart v. Canadian Imperial Bank of Commerce*, 43 F. Supp. 2d 395, 400 (S.D.N.Y. 1999)).  *Hart* and *Schappert* each failed to analyze the plain text of the OWBPA and instead summarily stated, in just one sentence, that the OWBPA applies only to substantive rights.  *See Hart*, 43 F. Supp. 2d at 400 (stating without further explanation that the OWBPA's "knowing and voluntary" requirement "refers only to substantive rights—not procedural"); *Schappert*, 2004 WL 1661073, at *10 (stating without further explanation that the "OWBPA's requirements do not apply to procedural rights such as the right to a jury trial").

*Hart* and *Schappert* both blindly relied on the Fifth Circuit's faulty reasoning in *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 660 (5th Cir. 1995), and its progeny.  *Williams'*

---

[22] *See American Elec. Power Co. v. Connecticut*, 564 U.S. 410, 428 (2011) (stating that "federal district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding on other judges, even members of the same court").

reasoning is inapposite and deficient in at least two ways.  First, *Williams*, like *Hart* and

*Schappert*, addressed a *pre-employment* waiver of the right to a jury trial and concluded that the

OWBPA was not intended to apply to "employees who agree to arbitrate claims that may arise

during the course of their employment," because "[i]n enacting the OWBPA, Congress' primary

concern was with releases and voluntary separation agreements in which employees were forced

to waive their rights." 56 F.3d at 660 (citing S.Rep. No. 263); *see also id.* (citing OWBPA's

prohibition on prospective waivers as a secondary reason for excluding pre-employment waivers

from the scope of the OWBPA).  And second, neither *Williams* nor the cases that followed it

addressed the key statutory phrase "any right or claim," and they also failed to examine whether

the statute itself provided that the right to a jury trial was a "right."  Indeed, the *Hart* court paid

so little attention to the statutory text that it misquoted the key language of the OWBPA,

referring to "*a* right or claim" rather than "*any* right or claim."  43 F.Supp. 2d at 400; *see also*

*Williams*, 56 F.3d at 660 (incorrectly stating "the OWBPA protects against the waiver of a right

or claim," rather than "any right or claim").

## IV.    THE FAA DOES NOT PRECLUDE A FINDING THAT THE WAIVER IS INVALID UNDER THE OWBPA.

### A.    Because Plaintiffs do not seek to avoid arbitration, the FAA's liberal policy favoring arbitration is not disturbed.

Contrary to IBM's assertions, Plaintiffs' legal theory does not conflict with the FAA

because they do not seek to avoid arbitration.  *See* Mot. at 10-12; *see also* Dkt. 35, Am. Compl.,

at ¶¶24, 88(b).  This action presents a straightforward case of statutory interpretation that in no

way seeks to restrain the availability of arbitration.  The narrow issue presented is whether IBM

satisfied the knowing and voluntary standard under the OWBPA when it purported to secure a

waiver, via execution of its Separation Agreements, of Plaintiffs' right to pursue or join a

collective action for their ADEA claims.  Plaintiffs do not challenge any other provision of the

Agreement or the general arbitrability of their ADEA claims.  To the contrary, Plaintiffs are fully

prepared to proceed in either arbitration or court after this discrete threshold issue is resolved and

the proper forum for Plaintiffs' collective claims is determined.  The First Amended Complaint

in no way challenges the presumption in favor of arbitration in the FAA.

      **B.**    **To the extent the FAA applies, the OWBPA is in harmony with the FAA because its waiver requirements fall within the FAA's saving clause**

      The OWBPA's waiver requirements are in harmony with the FAA because they squarely

fall within its saving clause.  The FAA's saving clause requires courts to refuse to enforce

arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any

contract."  9 U.S.C. § 2.  In practice, the clause operates as an exception to the normal liberal

policy favoring arbitration; it works to deny arbitration when it is determined that an agreement

violates "generally applicable contract defenses."  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612,

1622 (2018) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).  To that

end, "the saving clause recognizes only defenses that apply to 'any' contract.  In this way the

clause establishes a sort of 'equal-treatment' rule for arbitration contracts."  *Id.*

      This "equal-treatment" rule has precluded some litigants from relying upon the FAA's

saving clause in the past, most recently in *Epic Systems*.  There, the Supreme Court rejected the

respondents' argument that they could rely upon the FAA's saving clause to invalidate an

arbitration agreement with a class and collective action waiver, which they argued violated their

right to engage in concerted activity under section 7 of the National Labor Relations Act

("NLRA"). *Id.* at 1621-23.  The Supreme Court explained that the saving clause does not work

for "defenses that apply only to arbitration or that derive their meaning from the fact that an

agreement to arbitrate is at issue."  *Id.* at 1622.  Because the plaintiffs' ground for invalidating

their agreements under the NLRA applied only to individual arbitration agreements and not other

types of contracts, their saving clause argument was rejected.  *See id.*

    Unlike in *Epic Systems*, Plaintiffs' reliance on the saving clause does not turn on a

defense that targets arbitration but one that applies to "any contract": that their waiver was not

knowing and voluntary.  Under the unique OWBPA statutory scheme, employers are free to

require their employees to arbitrate their ADEA claims individually, so long as they meet the

anti-coercion requirements that apply equally to the waiver of "any right or claim" under the

ADEA, including the right to proceed collectively to a claim for age discrimination.  *See* 29

U.S.C. § 626(f); *see also* Section III *supra* (explaining that the OWBPA does not distinguish

between substantive and procedural rights).

    IBM's arguments to the contrary rest upon a fundamental misapprehension of Plaintiffs'

legal theory.  Mot. at 11.  Plaintiffs *do not* object to the arbitration agreements "because they

require individualized arbitration proceedings." *Id*.  Nor do Plaintiffs argue, as the employees did

in *Epic Systems*, that a federal statute is a *per se* bar to private, bilateral arbitration.  Instead,

Plaintiffs' narrow argument is that, in enacting the OWBPA, Congress imposed certain

heightened requirements to govern the process for knowingly and voluntarily waiving rights and

claims arising under the ADEA.  Nothing in the OWBPA precludes an employer and an

employee from agreeing to individual arbitration as the procedure for resolving ADEA claims as

long as the employer complies with the OWBPA's anti-coercion requirements.  Thus, the

OWBPA does not dictate *what* parties can agree to waive; it merely provides additional

procedures dictating *how* the waiver must occur.  Indeed, Plaintiffs concede that, under their

First Amended Complaint, if IBM had met the requirements of the OWBPA, then they would

have no objection to the enforcement of the Separation Agreement's arbitration provision, and

Plaintiffs would be forced to pursue their ADEA claims in bilateral, private arbitration.

**C.**   **The OWBPA's clear contrary congressional command overrides the FAA's mandate that arbitration agreements be enforced according to their terms.**

Alternatively, even if the OWBPA were "at odds" with the FAA—which it is not— the

OWBPA announces an unusually clear "contrary congressional command" barring enforcement

of a waiver of the right to a collective action under the ADEA, unless the OWBPA's anti-

coercion requirements for a "knowing and voluntary" waiver have been met.[23]  As the Supreme

Court has explained, "[l]ike any statutory directive, the [FAA]'s mandate may be overridden by a

contrary congressional command," which may be deduced from any of three sources: (1) the

statutory text, or (2) the legislative history, or (3) an inherent conflict between the statute's

purpose and enforcement of the arbitration clause.  *Shearson/American Express v. McMahon*,

482 U.S. 220, 226-27 (1987).  Here, all three sources establish a contrary congressional

command to bar enforcement of a waiver of the ADEA collective action right when the employer

chooses not to fulfill the OWBPA's minimum requirements.

**First**, as described above, the plain text of the OWBPA requires that employers meet

enumerated anti-coercion requirements before an employee's waiver of "*any* right or claim"

under the ADEA—including the right to bring or join a collective action—may be enforced.

That explicit and plain statutory language stands in contrast to the vague language in the NLRA

that was found insufficient to show an express contrary congressional command in *Epic Systems,*

138 S. Ct. at 1627.  In *Epic Systems*, the respondents argued that the right to engage in concerted

---

[23] *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985) ("Just as it is the congressional policy manifested in the [FAA] that requires courts liberally to construe the scope of arbitration agreements covered by the Act, it is the congressional intent express in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable.").

activity in section 7 of the NLRA implicitly overruled the FAA's mandate to enforce arbitration agreements according to their terms, because an agreement to arbitrate claims individually could prevent workers from acting in concert.  The Supreme Court rejected that argument, explaining that it "[ran] afoul of the usual rule that Congress does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *Id.*  Here, the OWBPA is anything but vague about the requirements for a valid waiver.  *See Oubre,* 522 U.S. at 427 (recognizing that in the OWBPA "Congress imposed specific duties on employers who seek releases of certain claims created by statute" and "delineated these duties with precision and without qualification").

The OWBPA's text clearly lays out the conditions employers must meet to obtain a valid waiver of "any right or claim" under the ADEA, including the right to bring or join a collective action for a violation of the ADEA.  By contrast, in *Epic Systems* the Supreme Court found no contrary congressional command in part because the statutory provision at issue "does not mention class or collective action procedures." 138 S. Ct. at 1624.  Likewise, in *American Express Company v. Italian Colors Restaurant*, 570 U.S. 228, 234 (2013), the Supreme Court found no contrary congressional command in "the antitrust laws" primarily because "they make no mention of class actions."  In contrast, the ADEA not only mentions collective actions but expressly classifies as a "right" the ability to participate in a collective action.

**Second**, the legislative history of the OWBPA strongly supports finding a contrary congressional command.  In both *Epic Systems* and *Italian Colors*, the Court emphasized that the statutes at issue were passed well before class action procedures were available and therefore it was unlikely that Congress intended to preclude enforcement of class action waivers in arbitration agreements.  *See Epic Systems*, 138 S. Ct. at 1624 ("The notion that Section 7 confers

a right to class or collective actions seems pretty unlikely when you recall that procedures like that were hardly known when the NLRA was adopted in 1935."); *Italian Colors*, 570 U.S. at 234 (noting that the Sherman and Clayton Acts "were enacted decades before the advent of Federal Rule of Civil Procedure 23").  On the other hand, the OWBPA was enacted with the "right" to a collective action expressly in mind.  Thus, Congress's use of the "any right or claim" language demonstrates a clear intent to override the FAA and prohibit enforcement of collective action waivers in arbitration agreements that do not meet the OWBPA's anti-coercion requirements.

**Third**, there is an inherent conflict between the underlying purpose of the OWBPA and the FAA's mandate.  The express purpose of the OWBPA is to protect older workers—and specifically older workers targeted in group layoffs—from unfair coercion to waive their ADEA rights and claims without enough information to properly value such waivers and without enough time to consider what they are waiving.  *See Oubre,* 522 U.S. at 427 ("The policy of the OWBPA is likewise clear from its title: It is designed to protect the rights and benefits of older workers.").  The OWBPA attempts to balance the playing field by providing older workers at least some basic information to assess the value of the ADEA rights and claims they are asked to waive, and enough time to properly analyze that basic information (including seeking the assistance of counsel).

The OWBPA's fundamental purpose would be frustrated if the FAA required enforcement of all collective action waivers in arbitration agreements, even those that failed to meet the statute's anti-coercion requirements.  If the OWBPA means anything, it means that waivers are invalid when an employer chooses to withhold the statutorily required information and time employees need to knowingly and voluntarily waive their express right to a collective action.  *See Oubre*, 522 U.S. at 427 (rejecting employer's proposed exception to OWBPA's

24

waiver requirements because this exception "would frustrate the statute's practical operation as well as its formal command" and "[w]e ought not to open the door to an evasion of the statute by this device").

## **CONCLUSION**

Based on the unambiguous text of the OWBPA and the Supreme Court's decision in *Oubre* confirming that the OWBPA should be interpreted based on its plain language and clear meaning, this Court should deny IBM's motion to dismiss and declare invalid and unenforceable the waivers of Plaintiffs' right to pursue their ADEA claims collectively.


Respectfully submitted,

Date:   October 2, 2019
/s/ Joseph M. Sellers
Joseph M. Sellers

/s/ Shaylyn Cochran
Shaylyn Cochran
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, N.W. Suite 500
Washington, D.C. 20005
Tel: (202) 408-4600
Email: jsellers@cohenmilstein.com
Email: scochran@cohenmilstein.com

/s/ Michael Eisenkraft
Cohen Milstein Sellers & Toll PLLC
88 Pine Street, 14th Floor
New York, NY 1005
Tel: (212) 838-7797
Email: meisenkraft@cohenmilstein.com

/s/ Jeffrey Neil Young
Jeffrey Neil Young

/s/ David G. Webbert
David G. Webbert

/s/ Carol J. Garvan
Carol J. Garvan

25

<u>/s/ Shelby H. Leighton</u>
Shelby H. Leighton
Johnson, Webbert & Young, LLP
160 Capitol Street, P.O. Box 79
Augusta, Maine 04332-0079
Tel:  (207) 623-5110
Email: jyoung@work.law
Email: dwebbert@work.law
Email: cgarvan@work.law
Email: sleighton@work.law

*Attorneys for Plaintiffs*