UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN ESTLE, MARGARET AHLDERS, LANCE SALONIA, and CHERYL WITMER,

Plaintiffs,

- against -

INTERNATIONAL BUSINESS MACHINES CORPORATION,

Defendant.

**MEMORANDUM**
**OPINION & ORDER**

19 Civ. 2729 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

In this action, Plaintiffs – who are former employees of Defendant International Business Machines Corporation ("IBM") – seek declaratory and injunctive relief to prevent enforcement of a collective action waiver in their separation agreements. Plaintiffs contend that the waiver is not enforceable under the Age Discrimination in Employment Act ("ADEA") and the Older Workers Benefit Protection Act ("OWBPA"). IBM has moved to dismiss. For the reasons stated below, IBM's motion to dismiss will be granted.

## BACKGROUND

### I. FACTS[1]

Plaintiffs each worked in divisions of IBM for between ten and thirty-four years. All Plaintiffs were over the age of 55 when Defendant IBM terminated their employment in May

[1] The following facts are drawn from the Amended Complaint and are presumed true for purposes of resolving Defendant's motion to dismiss. See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

2016, as part of a "Resource Action." (Am. Cmplt. (Dkt. No. 35) ¶¶ 13-16, 72) Defendant IBM is a New York corporation that provides technology services and equipment. (Id. ¶ 18)

Between 2001 and 2013, IBM "conducted at least a dozen group layoffs," using "a standard Separation Agreement, which required employees to sign a general waiver of employment-related rights and claims, including all rights and claims under the ADEA, in order to receive a severance payment and benefits. During that time, IBM consistently provided employees selected for layoff with the OWBPA comparator information." (Id. ¶¶ 35-36)

In 2014 – pursuant to a "company-wide change" – IBM stopped providing this comparator information to those employees selected for layoff. Plaintiffs contend that the comparator information must be provided under the OWBPA in order for IBM to obtain a waiver of ADEA rights. (Id. ¶¶ 33, 36) According to Plaintiffs, however, they "received no information in writing regarding which 'class, unit, or group' their Resource Action would affect, 'any eligibility factors' for the Resource Action, 'the job titles and ages of all individuals' asked to sign the waiver, or 'the ages of all individuals in the same job classification or organizational unit' within the group who were spared." (Id. ¶ 79)

In 2014, IBM also implemented a new Resource Action Separation Agreement (the "Separation Agreement") that "require[d] [Plaintiffs] to waive their right under the ADEA to pursue their claims collectively in any forum, including in arbitration." (Id. ¶¶ 38, 41) Each Plaintiff signed the Separation Agreement upon their termination, as a condition to receiving the following benefits:

> (a) a lump sum severance payment equivalent to one month of salary; (b) 12 months of continued health insurance and life insurance coverage for employees with 25 years of service, or 6 months for employees with 5 to 25 years of service; (c) free outplacement and career counseling services provided by Right Management, a leading career transition consulting firm; and (d) reimbursement for up to $2,500 for job-related skills training.

(Id. ¶¶ 20, 76)

The Separation Agreement provides that Plaintiff must "submit any and all 'Covered Claims' to final and binding arbitration," including "all legal claims . . . under the federal Age Discrimination in Employment Act of 1967. . . ." (Separation Agreement (Dkt. No. 35-1) at 4)

The Separation Agreement further provides that

> TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, YOU AND IBM AGREE THAT NO COVERED CLAIMS MAY BE INITIATED, MAINTAINED, HEARD, OR DETERMINED ON A MULTIPARTY, CLASS ACTION BASIS OR COLLECTIVE ACTION BASIS EITHER IN COURT OR IN ARBITRATION, AND THAT YOU ARE NOT ENTITLED TO SERVE OR PARTICIPATE AS A CLASS ACTION MEMBER OR REPRESENTATIVE, OR COLLECTIVE ACTION MEMBER OR REPRESENTATIVE, OR RECEIVE ANY RECOVERY FROM A CLASS OR COLLECTIVE ACTION INVOLVING COVERED CLAIMS EITHER IN COURT OR ARBITRATION.

(Id. (emphasis in original))

The Separation Agreement also provides that

> if you are included within any class action or collective action in court or in arbitration involving a Covered Claim, you will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be. Any issue concerning the validity or enforceability of any of the class action or collective action Waivers included as part of your agreement to arbitrate certain claims shall be decided only by a court of competent jurisdiction.

(Id.)

## II. THE AMENDED COMPLAINT

The Amended Complaint seeks a declaratory judgment that "IBM's purported waiver . . . of Plaintiffs' rights to initiate or join a collective action under the ADEA, and any other provisions of the Separation Agreement that purport to effectively waive that right, [are invalid,] because the purported waivers are not 'knowing and voluntary' under the OWBPA." (Id. ¶ 88)

The Amended Complaint also seeks an injunction "barring IBM from attempting to enforce the purported waivers against Plaintiffs, in any forum in the United States." (Id.)

## III. PROCEDURAL HISTORY

The Complaint was filed on March 27, 2019 (Dkt. No. 1), and the Amended Complaint was filed on August 9, 2019. (Dkt. No. 35)

Defendant IBM moved to dismiss the Amended Complaint on October 11, 2019. (Dkt. No. 38)

# DISCUSSION

## I. LEGAL STANDARDS

### A. Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957))).

**B. The ADEA and OBWPA**

The ADEA prohibits employment discrimination on the basis of an employee's age. See 29 U.S.C. § 623. Section 626(b) of the ADEA "incorporate[s] by reference the provisions of the Fair Labor Standards Act [('FLSA')] of 1938." McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 357 (1995). Section 216(b) of the FLSA provides that "[a]n action to recover the liability [under the FLSA] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Section 626(c) of the ADEA provides that – in an action brought under the ADEA – "a person shall be entitled to a trial by jury of any issue of fact[.]" 29 U.S.C. § 626(c).

"In 1990, Congress amended the ADEA by passing the OWBPA." Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426 (1998). As a result of the OWBPA, Section 626(f) of the ADEA provides that "[a]n individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary. Except as provided in paragraph (2), a waiver may not be considered knowing and voluntary unless" certain requirements are met.[2] 29 U.S.C. § 626(f).

---

[2] The requirements are that "(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate; (B) the waiver specifically refers to rights or claims arising under this chapter; (C) the individual does not waive rights or claims that may arise after the date the waiver is executed; (D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled; (E) the individual is advised in writing to consult with an attorney prior to executing the agreement; (F)(i) the individual is given a period of at least 21 days within which to consider the agreement; or (ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of

## II. ANALYSIS

Defendant IBM argues that the Amended Complaint fails to state a claim, because the "OWBPA's 'right or claim' language means a 'substantive right' under the ADEA," and the "OWBPA's requirements do not apply to waivers of procedural rights," such as the right to proceed by way of a collective action. (Def. Br. (Dkt. No. 39) at 9 (citing 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 259, 265-66 (2009)))

Plaintiffs argue that "14 Penn Plaza never even quoted – let alone examined – the key 'any right or claim' language in the OWBPA, and never decided whether the OWBPA was limited to substantive rights[,] because the parties never presented that argument to the Court." (Pltf. Opp. Br. (Dkt. No. 41) at 19)

In 14 Penn Plaza, the Supreme Court considered "whether a provision in a collective-bargaining agreement [("CBA")] that clearly and unmistakably requires union members to arbitrate claims arising under the [ADEA] is enforceable." 14 Penn Plaza, 556 U.S. at 251. In that case – notwithstanding the CBA's mandatory arbitration provision – the respondent union members brought ADEA claims in federal court after their union withdrew age discrimination claims from arbitration. Id. at 251, 253-54.

The respondent union member employees argued that

---

at least 45 days within which to consider the agreement; (G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired; (H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to-- (i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and (ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program." Id.

> [u]nion control over the process strips individual employees not only of their right to choose a forum, but also (as in this case) of their substantive rights guaranteed by statute. . . . Under the [ADEA], any waiver of an individual's right to pursue a judicial remedy must be made by the affected individual and be "knowing and voluntary."

Resp. Br., 14 Penn Plaza, 2008 WL 2774462, at *2-*3 (U.S. July 14, 2008). The respondents further argued that,

> [i]t is beyond dispute that only an individual employee, not the union, can waive his rights under the ADEA. The ADEA requires that any waiver be made by the affected "individual," that it be "knowing and voluntary," and that the individual receive consideration. 29 U.S.C. § 626(f)(1). A union's denial of individual employees' right to any forum in which to pursue their statutory antidiscrimination rights functions as a prospective waiver of the employees' substantive rights, contrary to Congress's clear intent.

Id. at *31.

The Supreme Court agreed with the petitioner employers that the CBA's mandatory arbitration provision was enforceable as to the employees' ADEA claims. Id. at 274. In so holding, the Court rejected the respondent employees' argument that the mandatory arbitration provision was unenforceable because "an individual employee must personally 'waive' a '[substantive] right' to proceed in court for a waiver to be 'knowing and voluntary' under the ADEA." Id. at 259 (quoting 29 U.S.C. § 626(f)(1)) (alteration in original). The Court ruled that

> the agreement to arbitrate ADEA claims is not the waiver of a "substantive right" as that term is employed in the ADEA. . . . Indeed, if the "right" referred to in § 626(f)(1) included the prospective waiver of the right to bring an ADEA claim in court, even a waiver signed by an individual employee would be invalid as the statute also prevents individuals from "waiv[ing] rights or claims that may arise after the date the waiver is executed."

Id. (quoting 29 U.S.C. § 626(f)(1)).

Plaintiffs claim that this ruling is of no import here, because the respondents in 14 Penn Plaza "never even argued that the OWBPA's requirements applied to anything other than

'substantive' rights," and the Court was "responding to the respondents' narrow argument that the right to a judicial forum was a 'substantive right'. . . ." (Pltf. Opp. Br. (Dkt. No. 41) at 20-21)

It is clear from respondents' briefing in 14 Penn Plaza, however, that when they used the phrase "substantive rights," they were referring to the anti-discrimination provisions of the ADEA, as distinguished from the "right to [choose] any forum" in which to pursue those claims. Resp. Br., 14 Penn Plaza, 2008 WL 2774462, at *31. Indeed, respondents argued that the mandatory arbitration provision – by waiving their right to choose a forum – "functions" as a waiver of the ADEA's substantive rights under the statute, because "in a union-controlled arbitration process, an employee is unable to vindicate his individual, substantive statutory antidiscrimination rights." Id. at *12, *31. The 14 Penn Plaza court squarely rejected that argument, as its treatment of Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974) makes clear.

The 14 Penn Plaza court notes that "Gardner-Denver erroneously assumed that an agreement to submit statutory discrimination claims to arbitration was tantamount to a waiver of those rights." 14 Penn Plaza, 556 U.S. at 265. The 14 Penn Plaza court goes on to explain that while Gardner-Denver

> was correct in concluding that federal antidiscrimination rights may not be prospectively waived . . . [,] it confused an agreement to arbitrate those statutory claims with a prospective waiver of the substantive right. The decision to resolve ADEA claims by way of arbitration instead of litigation does not waive the statutory right to be free from workplace age discrimination; it waives only the right to seek relief from a court in the first instance.

14 Penn Plaza, 556 U.S. at 265-66.

Plaintiffs do not address this language in 14 Penn Plaza, nor do they explain why – if agreeing to arbitration "does not waive the statutory right to be free from workplace age

discrimination" under the ADEA – agreeing to forego a collective action does waive this statutory right.

As noted above, Plaintiffs also argue that "the Supreme Court never even quoted the key statutory phrase 'any right or claim,' and so could not possibly have been interpreting the meaning of that textual phrase." (Pltf. Opp. Br. (Dkt. No. 41) at 20) However, the 14 Penn Plaza court could not have been clearer that it was interpreting "the 'right' referred to in § 626(f)(1)," which it held did not include "the right to bring an ADEA claim in court. . . ."[3] 14 Penn Plaza, 556 U.S. at 259. In other words, the 14 Penn Plaza court rejected any argument that the right to proceed in court is protected by Section 626(f).

In sum, 14 Penn Plaza holds that – for purposes of Section 626(f) – "right" means a "substantive right." This Court is bound by that interpretation, notwithstanding Plaintiffs' arguments concerning the statutory text, because "[i]n construing the text of any federal statute, [courts] first consider . . . the holdings of the Supreme Court . . . , which provide definitive interpretations of otherwise ambiguous language." S.E.C. v. Dorozhko, 574 F.3d 42, 46 (2d Cir. 2009).

It is likewise clear that the right to bring a collective action is not a substantive right. See Sutherland v. Ernst & Young LLP, 726 F.3d 290, 297 n.6 (2d Cir. 2013) ("We have previously explained that the procedural 'right' to proceed collectively presupposes, and does not

---

[3] For the same reason, Plaintiffs' reliance on Babb v. Wilkie, 140 S. Ct. 1168 (2020) is unavailing. In Babb, the Court addressed whether the "federal-sector provision of the [ADEA] . . . imposes liability only when age is a 'but-for cause' of the personnel action in question." Babb, 140 S. Ct. at 1171. The Court held that the ADEA "goes further than that," because "[t]he plain meaning of the critical statutory language . . . demands that personnel actions be untainted by any consideration of age." Id. Although Plaintiffs argue that "the plain language of the OWBPA, not the inapposite decision in Penn Plaza, controls the statutory interpretation issue," (May 15, 2020 Pltf. Ltr. (Dkt. No. 44)), the 14 Penn Plaza court interpreted the same OWBPA language on which Plaintiffs rely.

create, a non-waivable, substantive right to bring such a claim."). Accordingly, Plaintiffs' collective action waiver does not waive a "right" for purposes of Section 626(f), and the OBWPA therefore does not bar Defendant from enforcing the collective action waiver in the Separation Agreement.

Since 14 Penn Plaza, all courts that have analyzed this issue have concluded that Section 626(f) does not apply to procedural rights. See McLeod v. Gen. Mills, Inc., 856 F.3d 1160, 1165 (8th Cir. 2017) ("Penn Plaza thus interprets one of § 626(f)(1)'s references to 'right[s] or claim[s]' to mean substantive rights to be free from age discrimination, not procedural 'rights' to pursue age discrimination claims in court."); Horowitz v. AT&T Inc., No. 3:17-CV-4827-BRM-LHG, 2018 WL 1942525, at *18 (D.N.J. Apr. 25, 2018), opinion clarified on denial of reconsideration, 2019 WL 77306 (D.N.J. Jan. 2, 2019) (same); Hutchens v. Capital One Servs., LLC, No. 3:19CV546, 2020 WL 3053657, at *13 (E.D. Va. June 8, 2020) ("The Supreme Court has held that ADEA § 626(f)(1) does not prevent an employee from waiving or otherwise limiting the form in which his or her ADEA claim is brought."). Although Plaintiffs contend that these decisions "rely on fundamentally flawed reasoning" (Pltf. Opp. Br. (Dkt. No. 41) at 22), and "mischaracterize[] Penn Plaza" (June 26, 2020 Pltf. Ltr. (Dkt. No. 47) at 2), this Court concludes that these courts were correct in ruling that 14 Penn Plaza interprets "right" under Section 626(f) to mean "substantive right."

Plaintiffs argue in passing that two decisions issued in this District before 14 Penn Plaza – holding that the OWBPA's waiver requirements do not apply to procedural rights – were "wrongly decided" and "failed to analyze the plain text of the OWBPA[.]" (Pltf. Opp. Br. (Dkt. No. 41) at 24) However, these decisions each collect multiple cases in this District that reached

the same conclusion.[4] See Schappert v. Bedford, Freeman & Worth Pub. Grp., LLC, No. 03 CIV. 0058 (RMB), 2004 WL 1661073, at *10 (S.D.N.Y. July 23, 2004) (collecting cases, and stating that the "OWBPA's requirements do not apply to procedural rights such as the right to a jury trial"); Hart v. Canadian Imperial Bank of Commerce, 43 F. Supp. 2d 395, 400 (S.D.N.Y. 1999) (same, and noting that "[t]he Ninth Circuit is the only Circuit to apply the 'knowing and voluntary' test to arbitration agreements"; "we now join with other circuit courts and district courts within the Second Circuit in rejecting this heightened standard"); see also Rice v. Brown Bros. Harriman & Co., No. 96 CIV. 6326 (MBM), 1997 WL 129396, at *5 (S.D.N.Y. Mar. 21, 1997) (describing "several indications that Congress intended the OWBPA waiver requirements to apply only to waivers of substantive rights or claims under the ADEA").

Plaintiffs' arguments to the contrary rely heavily on Oubre v. Entergy Ops., 522 U.S. 422 (1998), in which the Court held that "[a]n employee 'may not waive' an ADEA claim unless the waiver or release satisfies the OWBPA's requirements." Id. at 426-27. In Oubre, a separated employee "signed a release, in which she agreed to waive, settle, release, and discharge any and all claims, demands, damages, actions, or causes of action" against her former employer. Id. at 424 (internal quotations and alteration omitted). The employee then filed suit under the ADEA. The district court granted summary judgment for the employer based on the waiver, and the Court of Appeals affirmed. Id. at 425. The Supreme Court reversed, however, because the "release did not comply with the OWBPA's stringent safeguards [and so] is unenforceable . . . insofar as it purports to waive or release [an] ADEA claim." Id. at 427-28.

---

[4] Plaintiffs cite two pre-14 Penn Plaza cases – Hammaker v. Brown & Brown, Inc., 214 F. Supp. 2d 575, 580 (E.D. Va. 2002) and Thiele v. Merrill Lynch, Pierce, Fenner & Smith, 59 F. Supp. 2d 1060, 1064 (S.D. Cal. 1999) for the proposition that the OWBPA's waiver requirements apply to both procedural and substantive rights. See Pltf. Opp. Br. (Dkt. No. 41) at 23. This Court concludes that these decisions are no longer good law in light of 14 Penn Plaza.

Although Oubre holds that an ADEA "claim" may not be waived without meeting OWBPA requirements, Oubre does not purport to interpret the meaning of "right" under Section 626(f). Accordingly, it is of no use to Plaintiffs here.

Plaintiffs also argue that Section 626(b) "expressly incorporates the full text of [S]ection 216(b) of the FLSA, which identifies as a 'right' both (1) bringing an action 'for and in behalf of himself . . . and other employees similarly situated' and (2) 'becom[ing] a party plaintiff to any such action.'" (Pltf. Opp. Br. (Dkt. No. 41) at 12 (quoting 29 U.S.C. § 216(b))) Read in context, however, Section 216(b) of the FLSA does not define "right" to include the right to bring a collective action. Instead, Section 216(b) creates a cause of action and a right to damages, and explains – in the language quoted by Plaintiff – when the right to bring a cause of action terminates: "The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor in an action under section 217 of this title. . . ." 29 U.S.C. § 216(b).

The Second Circuit has explained that the "right" to bring a collective action is a "procedural mechanism":

> Our conclusion that nothing in the text of the FLSA prevents an employee from waiving his or her ability to proceed collectively under the FLSA is reinforced by our earlier decision referring to the FLSA collective action "right" as a "procedural mechanism[]." Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 244 (2d Cir. 2011). We have previously explained that the procedural "right" to proceed collectively presupposes, and does not create, a non-waivable, substantive right to bring such a claim. See Parisi [v. Goldman, Sachs & Co., 710 F.3d 483, 488 (2d Cir. 2013)].

Sutherland, 726 F.3d at 297 n.6. Moreover, as Hutchens notes, "[i]f the 'knowing and voluntary' language of § 626(f)(1) does not apply to the mandatory language as 'shall be entitled to a trial by jury,' 29 U.S.C. § 626(c)(2) . . . , then Congress likely did not intend for it to apply to the . . .

[FLSA] collective action procedure." Hutchens, 2020 WL 3053657 at *13 (emphasis in original).[5]

In sum, while Section 216(b) uses the term "right" in explaining when an individual's cause of action terminates under the FLSA, these authorities and 14 Penn Plaza make clear that the ADEA does not elevate the FLSA's collective action provision from a "procedural mechanism" to a non-waivable right.

**CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss is granted. The Clerk of Court is directed to terminate the motions (Dkt. Nos. 38, 42) and to close this case.

Dated: New York, New York
September 21, 2020

SO ORDERED.

Paul G. Gardephe
United States District Judge

[5] Plaintiffs argue that "Hutchens myopically focuses on the less pertinent language in [Section 216(b)] providing that employees 'may' bring actions collectively, noting that the language is 'permissive, not mandatory.'" (June 26, 2020 Pltf. Ltr. (Dkt. No. 47) at 1) Even setting aside this language, however, Plaintiffs do not explain how their interpretation of Section 216(b) can be reconciled with 14 Penn Plaza.